UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| ESSEX INSURANCE COMPANY, )<br>    Plaintiff                    )<br>                                  )<br>v.                                )<br>                                  )<br>RICKY ROBINSON            )<br>CONSTRUCTION, INC., et al., )<br>    Defendant                )| CIVIL ACTION NO. 7:12-143 KKC<br><br>**OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the motion for summary judgment (DE 53) filed by the plaintiff, Essex Insurance Company. The issue raised is whether Essex must indemnify and defend the defendants on claims asserted against the defendants in a separate action. By its terms, the insurance policy issued by Essex does not require it to do so. However, there are factual issues regarding whether Essex's insurance agent represented that Essex would have such duties. Accordingly, Essex's motion must be denied.

I

The root of this controversy is a separate lawsuit filed against the defendant Ricky Robinson Construction, Inc. (RRCI). In that action, the plaintiff is an individual named Richard Adler who hired RRCI to build a home for him. (*See Adler v. Elk Glenn, LLC and Ricky Robinson Construction, Inc.*, Case No. 7:12-cv-00085 (filed July 31, 2012)). Adler alleges that RRCI built the home even though it knew or should have known that the site was not suitable for that purpose. RRCI explains that "Adler's fundamental claim against RRCI is that the house should not have been built on the lot. Adler contends the lot was 'unsuitable' to build on because it

was unstable strip mine reclamation fill, as opposed to 'control fill.'" (DE 56, Response at 5.)

Essex is RRCI's insurer. It filed this action asking for a declaration that the policy does not require it to indemnify RRCI if RRCI should ultimately be ordered to pay damages to Adler. Essex also asks for a declaration that it does not have to defend RRCI in the *Adler* action.

"Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Westfield Inc. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003). "An insurance company has a duty to defend its insured if the language of an underlying complaint against the insured brings the action within the scope of the insurance contract." *Id*.

The Essex policy requires it to pay any sums that RRCI "becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (DE 53-4, Policy, § I (1)(a) at CM-ECF p. 20.) It also requires Essex to defend RRCI again any suit seeking those damages. (DE 53-4, Policy, § I (1)(a) at CM-ECF p. 20.) The policy applies to property damages only if the damages are caused by an "occurrence." (DE 53-4, Policy, § I (1)(b) at CM-ECF p. 20.) An "occurrence" is defined as "an accident." (DE 53-4, Policy, § 5 (13) at CM-ECF p. 33.)

The Kentucky Supreme Court reviewed a policy with identical language and determined that claims of "faulty workmanship" are not "occurrences." *Cincinnati Ins. Co. v. Motorists Mutual Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2011). The court reasoned that, "[i]nherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id*. at 74. And claims for faulty workmanship "simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident.'. . . ." *Id*. at 75

n.19 (quoting *Kvaerner Metal Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006).

The court noted the distinctions between commercial general liability policies and performance bonds. "The purpose of a CGL policy is to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property." *Id*. (quoting *Nabholz Const. Corp. v. St. Paul Fire and Marine Ins. Co.*, 354 F. Supp. 2d 917, 922 (E.D. Ark. 2005). While the purpose of a performance bond is to "insure the contractor against claims for the cost or repair or replacement of faulty work." *Id*. The court determined that permitting insurance coverage for faulty workmanship claims would "convert a policy for insurance into a performance bond." *Id*. (quoting *Kvaerner Metals*, 908 A.2d at 899.)

For a loss to be "fortuitous," and, thus, covered under a policy such as at issue here, two conditions must be present. First, the insured cannot have intended to cause the loss. *Id*. at 74. In its response brief, RRCI points out that it did not intend to perform work in a faulty manner. (DE 56, Response at 5.) This may mean that RRCI meets the first condition for a "fortuitous" event: lack of intent. But as the court instructed in *Cincinnati*, the analysis does not end there.

The second condition for a fortuitous event is that the event must have been beyond the control of the insured. For this portion of the analysis, the court must focus on whether "the building of the . . . house was a 'chance event' beyond the control of the insured." *Id*. at 76 (citation and quotations omitted). In *Cincinnati*, the court found that the construction company clearly had control over the construction of the home. *Id*. Thus, the substandard construction could not be said to be a "fortuitous, truly accidental, event." *Id*.

The same is true of RRCI's construction of the Adler home. RRCI argues that it had no control over how the lot was filled. (DE 56, Response at 5.) This may be true but Adler's claim against RRCI is not that it filled the lot incorrectly but that it wrongly constructed his house on the fill.

Adler's breach of contract, breach of warranty claims and his claim that RRCI violated Kentucky's residential building code are all claims for damages that occurred as a result of faulty workmanship, not damages that occurred as the result of an accident. Accordingly, Essex has no duty under the policy's terms to indemnify or defend RRCI on these claims.

Adler also asserts a claim against RRCI for fraud in the inducement and a claim for negligence, asserting that RRCI had a duty to inform him that the lot was unsuitable for residential construction but failed to do so. These claims are based on representations that RRCI either made or failed to make to Adler. Because such actions or failures to act were within RRCI's control, they are not "accidental" and are, thus, not covered under the policy.

Finally, Adler asserts a claim for unjust enrichment against RRCI. Adler asserts that he gave RRCI $236,250 and RRCI is not entitled to it because RRCI committed fraud and did not construct the home correctly. Again, these acts or failures to act were within RRCI's control and, therefore, not "accidental."

In accordance with *Cincinnati,* none of Adler's claims against RRCI constitute an "occurrence" under the insurance contract and, accordingly, are not covered by the Essex policy.

## II

RRCI argues, however, that, if the Court should find that Essex owes no duty to indemnify or defend it under the terms of the insurance policy, Essex should

nonetheless be held to have such duties. This is because, according to RRCI, Essex's agent – Hatton-Allen Insurance Agency, Inc. – assured RRCI at the time that RRCI purchased the Essex policy that the insurance policy would cover claims of faulty workmanship.

RRCI attaches the affidavit of Tonia Robinson, who is an RRCI shareholder, officer and director. Ms. Robinson states:

> At that time of my first visit to Hatton-Allen Insurance Agency, I specifically advised the agency that [RRCI] needed insurance that would cover the company in the event it was sued on an allegation of faulty workmanship or other failure to meet constructions standards. The company had previously been sued on such a claim. Inasmuch as the company had no policy of insurance at that time, it was obligated to retain counsel to defend that claim, and ultimately, to pay the settlement of that claim from company funds. To avoid a subsequent such occurrence, I sought coverage for such claims. I was assured by representatives of Hatton-Allen Insurance Agency that [the Essex policy purchased] provided such coverage.

(DE 56-6, Robinson Aff.)

"When an insurance agent makes an affirmative misrepresentation concerning the coverage of an insurance policy, and the insured relies upon the misrepresentation, an insurance company may be liable for the insured's injury." *See Century Sur. Co. v. Ken Bar, LLC*, No. 5:07-CV-70-R, 2009 WL 2602809 at *6 (W.D. Ky. 2009)(citing *Pan–American Life Ins. Co. v. Roethke*, 30 S.W.3d 128, 133 (Ky.2000)). *See also Riney v. Mendenhall*, No. 4:04-CV-175-M, 2007 WL 2000005 at *1 (W.D. Ky. 2007).

An "agent" is defined as a "person who sells, solicits, or negotiates insurance or annuity contracts." KRS 304.9-020(1). "Kentucky statutory and case law have historically provided that anyone who solicited and received applications for insurance on behalf of an insurance company was an agent of the company anything in the policy or application to the contrary notwithstanding." *Roethke*, 30 S.W.3d at

5

131 (citation and quotations omitted). This is "to prevent an insurer from denying responsibility for the representations and actions of an agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions." *Id*. (citation omitted). Kentucky courts have recognized "the need to protect consumers from insurers who, in drafting contracts of adhesion, attempt to exculpate themselves from liability for the mistakes of those who market their product." *Id*.

Essex argues that Hatton-Allen was not its "agent," and points to the fact that Hatton-Allen has denied that it was Essex's agent. (DE 59, Reply at 9 n. 8.) Under Kentucky law, however, that denial is irrelevant if the statutory definition of "agent" is satisfied. *See Century Sur. Co.*, 2009 WL 2602809 at *6 (W.D. Ky. 2009)(citing *Roethke*, 30 S.W.3d at 131.)

Essex argues that the Court should reject RRCI's argument that the insurance agent made certain representations because Ms. Robinson does not identify a particular person who made the alleged representations. The Court agrees that, Ms. Robinson must ultimately offer evidence of the content of the representations and who made them. Ms. Robinson's statements in her affidavit are, however, sufficient to defeat summary judgment in Essex's favor.

The Court simply does not have sufficient evidence before it at this time regarding the relationship between Hatton-Allen and Essex or the representations that Hatton-Allen allegedly made to RRCI. Accordingly, the Court cannot determine at this time, as a matter of law, whether Essex has a duty to defend or indemnify RRCI.

For this reason, Essex's motion for summary judgment (DE 53) must be DENIED.

Dated March 3, 2015.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

7